1  Maria E. Siller

2  Clayton Siller

3  1958 Yodel Lane

4  San Diego, CA 92154

5  619-322-8870

6  In Pro per Person

**FILED**

Nov 20 2014

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY ___s/ Shadim___ **DEPUTY**

NUNC PRO TUNC
11/19/2014

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Maria E. Siller & Clayton Siller, ) | Case No.: 14CV1810-GPC-MDD |
| Plaintiff, ) | PLAINTIFF'S MOTION FOR LEAVE TO |
| vs. ) | FILE AMENDED COMPLAINT AND |
| IRS Agent Stephen Aloya, Attorney ) | MEMORANDUM OF LAW IN SUPPORT |
| Joel Tamraz, Attorney George By ) | |
| Sean Salmon, Lou Bruno, McMillan ) | |
| Law Firm, Litton Loan Servicer, ) | |
| GMAC, Ocwen 21 Mortgage Corp., ) | |
| Legal Writer Maggie Strickland, ) | |
| Attorney David M. Parker, ) | |
| Defendant | |

---

**INTRODUCTION**

Plaintiffs Maria Siller and Clayton Siller respectfully moves the

- 1 -                    14cv1810-GPC-MDD

Court, pursuant to Rule 15 of the Federal Rules of Civil Procedure, for leave to file an AMENDED COMPLAINT, a copy of which is attached hereto.  The amended complaint maintains all counts and allegations of the subsequent complaint, but also includes additional allegations as the result of the plaintiff filing bankruptcy and the repeated changes to the loan servicer.  Plaintiff's bankruptcy filing notice is attached and incorporated by reference as Exhibit 1.  Plaintiffs are under the belief and understanding that defendant's reckless regard for plaintiff's right to be free from pressurized tactics to force plaintiffs to drop their lawsuit and to force them from their home will continue if they are not laid bare before the court. Representatives of defendants have spread rumors within the legal community and to government agencies which have hindered the ability of plaintiffs to maintain their household and to obtain legal counsel. Plaintiffs were made aware of this after being notified from an attorney that he would no longer be able to represent plaintiffs because he had been notified that plaintiffs had unpaid attorney bills with a previous attorney.  This insight shed some light on why attempts to retain the services of an attorney either failed or resulted in changes to court filings that removed defendants who had been found culpable in similar issues that plaintiffs are asking for redress from.  Plaintiffs are of the belief that if these negligent acts and slanderous statements are not laid before the court that plaintiffs will continue to be hindered and sabotaged by defendant's unscrupulous and negligent actions.

Accordingly, plaintiffs seek the Court's leave to amend, which should be granted for the reasons set forth below.

### STATEMENT OF FACT

On June 5, 2006, Plaintiffs filed a complaint in the Superior Court of California, County of San Diego requesting that the court resolve the dispute with defendants alleging Breach of Truth in Lending Act (TILA), Violations of Federal Real Estate Settlement Procedures Act(RESPA), Breach of Contract, Fraud/Misrepresentation, Breach of Fiduciary Duty/Conversion, and Quiet Title as a result of a fraudulent mortgage transaction.

These disputes arose out of a fraudulent mortgage transaction that plaintiff Maria Siller was induced into under duress and fraudulent representations on the part of MD Mortgage and Joyce DeVara acting as a representative of MD Mortgage.  After plaintiff Clayton Siller was removed from the loan agreement Maria Siller was asked to sign the loan agreement without the presence of her spouse.  Spanish is Maria Sillers's first language and therefore she relied on the verbal explanations of MD Mortgage's representative to clarify certain areas of the loan document that she ultimately signed under extreme pressure and duress from MD Mortgage's representative Joyce DeVara. Specific clarification was asked regarding the total amount of the loan due to plaintiff Maria Siller being instructed by her spouse Clayton Siller to only sign for the amount that they initially asked for.  When defendant Joyce DeVara was asked to clarify the discrepancy between the amount listed on the Buyer/Borrower statement and the

amount that they were told that they would receive upon initially applying for the loan, Joyce DeVara acting as a representative for MD Mortgage stated that plaintiffs would receive loan proceeds in the amount of $27,000 and not the $26,481.14 that showed on the Buyer/Borrower statement.  Plaintiff Maria Siller relied on defendant Joyce DeVara's verbal statements when the loan document was signed.

As a result of an investigation initiated by plaintiffs in connection with the aforementioned mortgage fraud complaint on August 25, 2009 an order by the California Department of Real Estate Commission was granted revoking the licenses of MD Mortgage Company Group, Inc. owner and James DeVara.  MD Mortgage Company Group, Inc. and James DeVara acting as a representative of MD Mortgage Company Group, were parties to the actions that resulted in the allegations at issue in the current action.

As a result of an investigation initiated by plaintiffs in connection with the aforementioned mortgage fraud complaint on September 23, 2009 an order by The Commissioner of the State of California was granted revoking the licenses of Option One Mortgage Corporation.  Option One Mortgage Corporation was the servicer for lender MD Mortgage Group, Inc.

On March 10, 2010 the fourth appellate district reversed and remanded the decision on defendant Option One Mortgage Corporation's motion for summary judgment that was granted by the presiding judge while the action was before the Superior Court of California, County of San Diego.  Option One Mortgage Corporation was the servicer for

lender MD Mortgage Group, Inc. Upon appeal the judge determined that the it was not shown that the plaintiffs could not establish each of their causes of action. The appellate court also decided that the trial court abused its discretion by not providing plaintiffs with an opportunity to correct their responses to the lenders undisputed facts.

Plaintiff's loan servicer has changed several times throughout the duration of litigating the case and as a proximate result of these changes additional issues have arisen in connection with the servicing of the loan.

ARGUMENT

**PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The preservation of justice will not be protected if the court denies plaintiffs request to amend the complaint. Since the time that plaintiffs originally filed the complaint there have been numerous issues that have developed over the course of the case, including recent events connected with the aforementioned case set before the court. Without the leave of the court to amend their complaint plaintiff's ability to properly set forth the claims in their case and the court's ability to make a judicious decision will be impeded.

14cv1810-GPC-MDD

The issues plaintiff would like to set before the court or not merely customer service complaints, but are issues that require the attention and judicious scrutiny and examination of the court. Plaintiffs are of the belief that requesting leave from the court to file the amended complaint is their only recourse to address the allegations set forth in this action that has been pending for almost a decade.

Federal Rules of Civil Procedure Rule 15(a)(2) provides the court broad discretion to determine what constitutes the preservation of justice. Plaintiffs are of the belief that the only procedural avenue available to bring to the courts attention recent federal violations that have developed in the current action is to request leave to amend their complaint. The defendants will not be harmed or prejudiced if plaintiffs initial complaint is amended.

During the almost 10 year period that this action has been pending before the court the plaintiffs have not amended or requested to amend their original complaint, but instead sought to use alternative methods which involved utilizing the defendant's internal processes and mechanisms to deal with disputes to no avail.

Plaintiffs are in their right to request leave of the court to amend their complaint in order to properly set before the court subsequent issues that are now at play in the current action. Plaintiffs are in their right to request leave of the court to amend their complaint in order to properly set before the court subsequent issues that are now at play in the current action.  It is evident by

defendant's actions that defendants refuse to adhere to applicable federal rules and regulations pertaining to fair and honest dealings. It is for this reason, collusive activities between several parties named as defendants in this action, the continuous attempts to eject plaintiffs out of the property that is a part of this action that the plaintiffs must lay themselves at the mercy of the court to resolve these newly developed egregious actions on the part of the defendants.

Any new issues and/or defendants included in the amended complaint are the direct result of defendant's violation of plaintiff's rights to life, liberty, and the pursuit of happiness without interference.

Accordingly, plaintiffs are in their rights to properly litigate their case, and not granting the motion will bar plaintiffs from properly setting before the court newly developed issues.  Therefore this adverse determination by the court will not be in accordance with the preservation of justice that Federal Rules of Civil Procedure 15 (a)(2)affords to all litigants that come before the court for the court's fair and judicious adjudication of disputes set before it.

CONCLUSION

For the reasons identified above, plaintiffs requests that the Court grant Plaintiff's motion for leave to file the proposed amended complaint.

Respectfully submitted this 18th day November, 2014.


_____
Maria Siller, In Pro per Person


_____
Clayton Siller, In Pro per Person

1    Maria E. Siller

2

3    Clayton Siller

4

5    1958 Yodel Lane

6

7    San Diego, CA 92154

8

9    619-322-8870

10

11    In Pro Per Person

12

13                UNITED STATES DISTRICT COURT

14

15             SOUTHERN DISTRICT OF CALIFORNIA

16

17    Maria E. Siller & Clayton Siller,    )   Case No.: 14CV1810-GPC-MDD

18               Plaintiff,    ) **FIRST AMENDED COMPLAINT AND DEMAND**

19    vs.                          ) **FOR JURY TRIAL**

20    MD Mortgage Group Escrow, a       )

21    California Corporation, MD Mortgage   )

22    Group, Inc., a California          )

23    Corporation, Sand Canyon Corporation, )

24    formerly known as Option One Mortgage )

25    Corporation, Litton Loan Servicer,    )

26    GMAC Mortgage, LLC, Ocwen 21 Mortgage )

27    Corp., IRS Agent Stephen Aloya, Joyce )

28    Devara, an individual, Timothy Gray,   )

| | |
|---|---|
| 1 | and individual, Nicole Nelson, an ) |
| 2 | individual, Attorney Joel Tamraz, ) |
| 3 | Attorney George Bye, Sean Salmon, an ) |
| 4 | individual, Lou Bruno, an individual, ) |
| 5 | McMillan Law Firm, Legal Writer ) |
| 6 | Maggie Strickland, an individual, ) |
| 7 | Attorney David M. Parker, DOES 1-100 ) |
| 8 | Defendant ) |
| 9 | ) |
| 10 | ) |
| 11 | |

COMES NOW, Plaintiff Maria E. Siller, in pro per person, and Clayton Siller, in pro per person (hereinafter "Plaintiffs"), against Defendants David M. Parker, Stephen Aloya, Joel Tamraz, George Bye, Lou Bruno, Sean Salmon, Litton Loan Servicer, 21 Mortgage Corp., Legal Writer Maggie Strickland, and DOES 1-100 (hereinafter "Defendants").

### JURISDICTION

1) At all times mentioned herein, the Plaintiffs were and are residents of San Diego, California.

2) Upon information and belief, at all times mentioned herein, Defendants MD Mortgage Group Escrow was a business duly authorized to conduct business in the State of California.

3) Upon information and belief, at all times mentioned herein, Defendants MD Mortgage Group Inc. was a business duly authorized to conduct business in the State of California.

4) Upon information and belief, at all times mentioned herein, Defendants San Canyon Corporation formerly known as Option One Mortgage Corporation was a business duly authorized to conduct business in the State of California.

5) Upon information and belief, at all times mentioned herein, Defendants Joyce DeVara was a notary public duly authorized to notarize in the State of California.

6) Upon information and belief, at all times mentioned herein, Defendants Timothy Gray was an individual residing and conducting business in the State of California.

7) Upon information and belief, at all times mentioned herein, Defendants Nicole Nelson was an individual residing and conducting business in the State of California.

8) Upon information and belief, at all times mentioned herein, Defendant Maggie Strickland was an individual residing and conducting business in the State of Nevada.

9) Upon information and belief, at all times mentioned herein, Litton Loan Servicer was a foreign business with its principal place of business in the State of Texas.

10) Upon information and belief, at all times mentioned herein, 21st Mortgage Corp. is a foreign business with its principal place of business in the State of Tennessee.

11) Upon information and belief, at all times mentioned herein, GMAC Mortgage, LLC is a foreign business with its principal place of business in the State of Pennsylvania.

12) Upon information and belief, at all times mentioned herein, Defendants Ocwen Loan Servicer is a foreign business with its principal place of business in the State of Georgia.

13) The residence and principal place of business of other named defendants are not known to the plaintiffs at this time and will be obtained during discovery.

14) Upon information and belief, at all times mentioned herein,

15) The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100 inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. The Plaintiffs are informed, believe and thereupon allege that the Defendants designated herein as DOES 1-100 are any of the following:

    a. Parties responsible in some matter for the events and happenings herein referred to that caused injuries and damages proximately thereby to the Plaintiff as herein alleged;

    b. Parties that are the agents, servants, employees, and/or contractors of the Defendants, each of them acting within the course and scope of their agency, employment or contract;

    c. Parties that have assumed or retained the liabilities of any of the Defendants by virtue of an agreement, sale, transfer or otherwise.

    d. The Plaintiffs will ask leave of the Court to amend this Complaint to insert true names and capacities of said Defendants, DOES 1-100, inclusive, when the same have been ascertained by the Plaintiff, together with appropriate charging allegations, and to join said Defendants in the action.

16) Jurisdiction is proper under 28 USC §1332 in that there is diversity of citizenship.

**GENERAL ALLEGATIONS**

17) Plaintiff repeats and re-alleges each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

18) At all times mentioned herein, in the early part of 2006, Clayton Siller and Maria Siller (hereinafter "plaintiffs") found property located in Baja California, Mexico that plaintiffs were interested in purchasing as their retirement home.

- 4

19)   The plaintiffs contacted several mortgage brokers in order to obtain the $30,000 down payment that was needed in order to secure said property.

20)   MD Mortgage offered the plaintiffs a refinance package; however they were initially only offering $15,000.  Based on this amount being only half of the required $30,000 down payment that the plaintiffs needed to secure the property they decided to decline the offer and began searching for other options.

21)   MD Mortgage contacted the Sillers again, and offered a refinance package with Option One Mortgage for $27,000, which the plaintiffs decided to accept.  Upon further review of the structure of the loan plaintiffs discovered that the new loan was a 24 month loan that required a balloon payment in the amount of $316,000 at the end of the loan.

22)   A few days prior to the closing, MD Mortgage, acting on behalf of Option One Mortgage informed Clayton Siller that their joint application was rejected and since Maria Siller's credit score was higher than Clayton Siller's the loan would solely be in the name of Maria Siller.

23)   On January 25, 2006 during the closing Clayton Siller was asked by the Notary Public, Joyce DeVera who was acting as an agent of MD Mortgage and also witnessed the signatures on the closing documents, to step out of the room while Maria Siller signed the loan documents.

24)   Plaintiffs did not receive the disclosures until the closing date, at which time these disclosures were buried in a large stack of papers that were only provided to Maria Siller, which she was required to sign in a short span of time and without a proper explanation of the new application and structure of the loan.

25)   When Mr. Siller noticed that the Buyer/Borrower statement showed $26,481.14 and not the $27,000 that was previously stated he questioned

1   the notary about this discrepancy and she ensured plaintiffs that the loan

2   was for $27,000.

3   26)   Since English is not Maria Siller's first language, she was not aware

4   that she was signing documents stating that she made $10,000 monthly and

5   therefore signed the documents.

6   27)   In order to fund the loan Option One and MD Mortgage conspired together

7   in order to override underwriting rules and guidelines.

8   28)   On February 6, 2006 plaintiffs were devastated when they received the

9   funds in the amount $15,344.15 and not the $27,000 that they agreed to and

10   were expecting.

11   29)   On February 9, 2006 plaintiffs notified MD Mortgage that they were

12   exercising their right to cancel the contract, which was based on the

13   breach of contract on the material terms of the loan agreement.

14   30)   The plaintiffs attempted to wire the $15,344.15 back to MD Mortgage,

15   but MD Mortgage refused to accept the funds.

16   31)   The plaintiffs sent a notice of cancellation on three separate

17   occasions to MD Mortgage to no avail.

18                          **FIRST CAUSE OF ACTION**

19                   **(BREACH OF TRUTH IN LENDING ("TILA"))**

20   27)   Plaintiff realleges and incorporates by reference each and every

21   allegation contained in paragraphs one through twenty six above.   Sand Canyon

22   Corporation formerly Option One Mortgage engaged in various TILA violations

23   in that they failed to provide Plaintiff's with proper written disclosure of

24   all credit terms and cancellation rights before consummation.

25   28)   The Truth in Lending Act was originally Title I of the Consumer Credit

26   Protection Act, Pub.L. 90-321, 82 Stat. 146, enacted June 29, 1968.   The

27   regulations implementing the statue, which are known as "Regulation Z", are

28   codified at 12 C.F.R. 226.   Most of the specific requirements imposed by TILA

are found in Regulation Z, so a reference to the requirements of TILA usually refers to the requirements contained in Regulation Z, as well as the statute itself.

29)   The stated Congressional purpose behind TILA is to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

30)   It also imposes limitations on home equity plans that are subject to the requirements of 12 C.F.R. 1026.40 and certain "higher-priced" mortgage loans (HPMLs) that are subject to the requirements of 12 C.F.R. 1026.35.  The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling.

31)   Pursuant to 15 U.S.C. Section 1635(a)TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as securitized.

32)   TILA and its regulations, issued by the Federal Reserve System, 12 C.F.R. Section 226, 1029 ("Reg Z"), require the lender to provide two copies of the Notice of Right to Cancel or Notice stating the specific date on which the three day rescission period expires in pursuant to 15 U.S.C. Section 1635(a).

33)   12 U.S.C. Section 1635(f) states that if the lending institution omits the expiration date and fails to cure the omission by subsequently providing the information, provides notice that is otherwise not clear or fails to provide material disclosures, the borrower may rescind the loan within three years after it was consummated.

34)   12 C.F.R. Section 226.23 provides for the notice of the right to rescind a contract.  In a transaction subject to rescission, a creditor shall

- 7 -

1  deliver 2 copies of the notice of the right to rescind to each consumer
2  entitled to rescind.  The notice shall be on a separate document that
3  identifies the transaction and shall clearly and conspicuously disclose the
4  date the rescission period expires.

5  35)   TILA is a strict liability, remedial statute that is to be construed
6  liberally in favor of borrowers.  *Smith v. Fid Consumer Disc. Co* (3rd Cir.
7  1990) 898 F. 2d 896, 898.  Sand Canyon Corporation formerly Option One's
8  mandatory Notice of the Right to Cancel is defective on its face, causing the
9  plaintiffs right of rescission to be extended from three days to three years.
10 15 C.F.R. Section 1635 (f).

11 36)   TILA requires the notice to clearly state the specific date on which
12 the three day rescission period expires.  C.F.R. Section 226.23.

13 37)   TILA states that the right to rescind expires on the third business day
14 following consummation.  The consummation date was on January 25, 2006.

15 44)TILA defines business days to include all calendar days except Sunday.   12
16 C.F.R. 226.2(a)(6).

17 38)   A notice to cancel would be untimely if it were sent on the date that
18 Sand Canyon Corporation formerly Option One informed the borrower that it
19 must be sent.  Sand Canyon Corporation formerly Option One therefore provided
20 conflicting and confusing information regarding the rescission deadline.

21 39)   Semar v. Platte Valley Federal S & L Ass'n (9th Cir. 1986) 791 F.2d 699,
22 704 reads, "technical or minor violations of TILA or Reg Z, as well as major
23 violations, impose liability on the creditor and entitled the borrower to
24 rescind.  "To insure that the consumer is protected….[TILA and ReX must be
25 absolutely complied with and strictly enforced."*Mars v. Spartanburg Chrysler
26 Plymouth.* (4th Cir. 1983) 713 F.2d 65, 67 (holding that technical violation,
27 even from merely a minor variation in language ant type size for TILA
28 requirements, imposes liability.  Huff v. Stewart-Gwinn Furniture Co (4th Cir.

1  1983) 733 F. 2d 67, 69 minor violations of TILA and Reg Z impose liability
2  even if, as creditor alleged, consumer was not misled and was given a
3  meaningful and correct disclosure of crucial credit terms."

4  40)    Some Federal Courts have followed *Semar* and held that including the
5  wrong date or no date on the Notice of Right to Cancel extended the right to
6  rescind to three years.  Taylor v. Domestic Remodeling Inc., et al. (5th Cir.
7  1996) 97 F.3d 96, incorrect rescission date combined with disbursement of
8  loan constitutes a violation of TILA.

9  41)    The failure to fill in rescission expiration date violates TILA *White*
10 *v. Homefield Financial, Inc.* (W.D. WA. 2008) 545 F. Supp. 2d 1159, 1168.

11                          SECOND CAUSE OF ACTION

12        VIOLATIONS OF FEDERAL REAL ESTATE SETTLEMENT PROCEDURES ACT

13                                  (RESPA)

14 42)    Plaintiff reallages and incorporates by reference each and every
15 allegation contained in paragraphs one through twenty six above.

16 51) The acts of Defendants violated provisions of the Federal Real Estate
17 Settlement Procedures Act (RESPA) and Regulation X, set forth at 12 U.S.C.
18 Section 2601 and 24 CFR Section 3500 respectively by acts of defendants, as
19 follows:

20 43)    Failure to provide preliminary disclosure of the yield spread premium
21 and other estimated or actual charges;

22 44)    Failure to disclose the true loan terms at the closing of the mortgage;

23 45)    Charging a yield spread premium for other than the purposes approved by
24 HUD, thereby constituting an excessive and unearned fee;

25 Including other inflated or otherwise excessive and unearned fees as defined
26 by RESPA, Regulation X, and clarifying policies of HUD;

27    • Failure to use official HUD-1 forms at closing;

28

                                    - 9                    14cv1810-GPC-MDD

- Failure to provide RESPA Special Information Booklet within three days of receiving their loan application; and
- Failure to provide a timely good faith estimate of the mortgage settlement terms.

45)   Defendant, Sand Canyon Corporation formerly Option One, helped prepare said documents, or knew at the time that they funded and processed the subject loan that said violations existed, many of which were the direct result of Sand Canyon's paying defendant to perpetrate the fraud described herein.  Defendants were placed on notice as to the RESPA violations within one year of the violations by numerous written and oral communications from plaintiffs regarding the violations.

46)   Plaintiffs have been greatly damaged by said violations, in that they have been charged improper fees, have been forced to endure a mortgage with such oppressive terms.

47)   Plaintiffs request full relief under RESPA, including damages, rescission of the mortgage contract, and all statutory penalties and fines against defendants.

58) Plaintiffs further request reasonable attorneys', costs incurred in bringing this claim, and such further relief as this court deems just.

**THIRD CAUSE OF ACTION**

**(BREACH OF CONTRACT)**

- 10

14cv1810-GPC-MDD

48)   Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs one through twenty six above.

49)   On or about January 25, 2006, Maria Siller and defendants entered into a written agreement wherein Maria Siller agreed to take out a loan from defendants with an understanding that she would receive a net cash pay of $27,000.

50)   Maria Siller was informed by the notary public, Joyce DeVera, that she would indeed receive the cash payout of $27,000 despite the Buyer/Borrower statement indicating she would only receive $26,481.14.

51)   Plaintiff has performed all conditions, covenants and promises required on her part to be performed in accordance with the terms and conditions of the contract.

52)   On or about February 6, 2006, defendants breached the contract by wiring to plaintiff an amount of $15,344.15, slightly more than 50% of the amount promised to the Sillers.

53)   Having accepted the yield spread premium alleged above, defendants become co-conspirators with Sand Canyon Corporation in the misrepresentation of the terms and nature of the subject loan, and is therefore jointly and severally liable with Sand Canyon Corporation for said breach of loan agreement/contract.

54)   As a result of the said breach of contract, plaintiffs have suffered general and special damages in amounts to be determined at trial.

FOURTH CAUSE OF ACTION

(FRAUD/MISREPRESENTATION)

- 11                          14cv1810-GPC-

MDD

55)  Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs one through twenty six.

56)  Defendants willfully made affirmative misrepresentations, concealed the truth, and made false promises to plaintiffs during the refinancing process that is the subject of this action.

57)  Tim Gray and Joyce DeVera, misrepresented important facts related to the terms of the loan agreement and related documents.

58)  Nicole Nelson acted as escrow officer for the loan transaction and concealed the fact that the mortgage terms had changed with plaintiff's prior approval and the changes revised the loan.

59)  Defendant, Sand Canyon Corporation formerly Option One, prepared the loan documents with the above described legal deficiencies, and paid defendant to cooperate in breaching their duty to plaintiffs and selling them a loan that was more expensive and desirable than what they qualified for, and was designed to provide far less funding then they needed, while placing their home at risk.

60)  Plaintiff is informed and believes and therefore alleges that these misrepresentations were made by defendants without knowledge of their falsity of knowledge of the effect of said concealment of material facts.

61)  Defendants intended to induce plaintiffs to alter her position to plaintiff's injury or risk.  Maria Siller actually and justifiably or reasonably relief on the defendants misrepresentations in agreeing to the mortgage refinancing contract.

62)  Plaintiffs reliance on defendants misrepresentations have caused plaintiffs damage as described herein in an amount to be established at the

- 12                          14cv1810-GPC-
                              MDD

1 | time of trial, along with prejudgment interest and such further relief as the
2 | court deems just and proper.

3 | 63)   Defendants in performing the acts herein, intentionally misrepresented
4 | to plaintiffs the true terms of the mortgage refinancing contract, defendants
5 | did so with the intention of depriving plaintiffs of their money and
6 | property, thereby justifying an award of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY - CONVERSION)

64)   Plaintiff realleges and incorporates by reference each and every
allegation contained in paragraphs one through twenty six above.

65)   Plaintiffs are, and at all times herein relevant were the owners of or
entitled to immediately possess the monies paid to defendants for the
mortgage refinancing and loan payments.  Defendants wrongfully interfered
with plaintiff's interests in the above-described property by taking
plaintiff's property through fraudulent means and refusing to honor
plaintiff's right to cancel the mortgage based upon the inadequate
disclosures and fraudulent acts herein.

66)   Plaintiffs are informed and believe, and allege that the funds were
used for defendants own purposes.

67)   An escrow holder is an agent and fiduciary of the parties to the escrow
as established in Amen v. Merced County Title Co. 58 Ca; 2d 528, 534 (1962).
A person who provided brokerage services to a borrower in a covered loan
transaction by soliciting lenders or otherwise negotiating a consumer loan
secured by real property, if the fiduciary of the consumer.

68)   Plaintiff's escrow agents and/or brokers, MD Escrow, MD Mortgage, Nicole Nelson and Tim Gray owed fiduciary duties to plaintiffs.

69)   As a result of defendant's act of conversion, plaintiffs have been damaged in the sum to be proven at the time of trial, including all compensatory damages.

70)   Plaintiffs are entitled to damages and repossession of the converted monies and will seek their election of remedies, at the time of trial.

71)   Plaintiffs are further entitled to compensation for the time and money expended in pursuit of the property.

72)   Defendants acted with willful oppression, fraud, malice and in conscious disregard of the rights of plaintiffs, and plaintiffs are therefore entitled to punitive damages according to proof at the time of trial.

### SIXTH CAUSE OF ACTION

#### (QUIET TITLE)

73)   Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs one through twenty six above.

74)   Plaintiff's property, APN 633-390-32-00, described as Lot(s) 32 of Park Place Estates, in the City of San Diego, County of San Diego, State of California, according to the map thereof No.13337, filed in the Office of the County Recorder of San Diego County on June 25, 1996.

75)   Plaintiffs are informed and believe that defendant's acts have changed plaintiff's title to their home.  Plaintiff's title is clouded by the mortgage held by defendant, Sand Canyon Corporation formerly Option One, which was only entered into by plaintiffs due to the fraud and undue influence of defendants, acting in concert to defraud plaintiffs.

- 14                          14cv1810-GPC-

MDD

76)     Defendants assert an adverse claim to plaintiff's title to subject property, and plaintiffs seek to quiet title as to their title as of January 25, 2006, as the owners in fee simple.

77)     Defendants acted with willful oppression, fraud, malice and in conscious disregard of the rights of the plaintiff, and plaintiffs are therefore entitled to punitive damages according to proof at the time of trial.

### SEVENTH CAUSE OF ACTION

#### (NEGLIGENCE)

78)     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs one through twenty six above.

79)     Due to the negligence in servicing of plaintiffs loan defendants have mentally, emotionally, and financially harmed defendants.

Plaintiffs loan has repeatedly changed servicers during the course of litigation which has resulted in further violations against plaintiffs. Plaintiffs are in their right to request leave of the court to amend their complaint in order to properly set before the court subsequent issues that are now at play in the current action.  It is evident by defendant's actions that defendants refuse to adhere to applicable federal rules and regulations pertaining to fair and honest dealings. The defendant's negligence has caused extreme emotional distress resulting in repeat visits to the hospital for coronary related issues along with extreme financial loss.

1       **WHEREFORE,** Plaintiffs, expressly reserve their right to amend their

2   plaintiff at the time of trial of the action herein to include all parties

3   and items of damage not yet ascertained, demands judgment against the

4   defendants for each cause of action as follows:

5      1) Plaintiffs pray for relief in the form of damages according to proof,

6         at the time of trial;

7      2) Plaintiffs further seek full compensation for the time and money

8         expended in pursuit of the property and punitive and exemplary damages

9         and such further relief as this court deems just and proper.

10     3) For general damages in an amount to be determined at trial;

11     4) For emotional damages in an amount to be determined at trial;

12     5) For damages to credit reputation

13     6) For punitive damages, in an amount to be determined at trial;

14     7) For compensatory damages, in an amount to be determined at trial;

15     8) For interest at the legal rate;

16     9) For reasonable fees and cost of suit; and

17     10)   For such other and further relief as the court may deem just and

18        proper

1

**DEMAND FOR JURY TRIAL**

2        Plaintiffs hereby request a trial by jury on all issues in this case,

3   pursuant to all applicable rules.

4                                    Dated this 18th of November, 2014

5

6

7        Maria Siller, In Pro Person

8        1958 Yodel Lane

9        San Diego, CA 92154

10

11

12       Clayton Siller, In Pro Person

13       1958 Yodel Lane

14       San Diego, CA 92154

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                 - 17                      14cv1810-GPC-

                            MDD